Your Honors, and I'd like to reserve three minutes of time for rebuttal. Thank you. We believe the District Court erred in deciding key issues of fact and law in this case. First, the most glaring issue that we mentioned in our briefing, but if Your Honors have more questions about it, we believe the District Court applied the disparate treatment analysis incorrectly. Ms. Lui made it clear that she was replaced by three individuals not of her protected class, and the District Court argued that those individuals needed to be similarly situated. The Sixth Circuit in Vincent v. Brewer says otherwise. There has been no case citation rejecting Vincent v. Brewer, and it also is just inconsistent with the flexibility of Title VII. For example, Reeves v. Sanderson is the seminal case saying falseness of a – falsity of a – that's the basis of an adverse action can infer discrimination. Reeves is also a replacement case. That involved an individual where there was basically I think he had bad record keeping and then he was replaced by younger employees. But Reeves is applied to every case for Title VII. It's not just applied to replacement cases. It's not just applied to cases involving discipline. It's – Reeves applies to proving pretext, and that's what this case is about. There is so much evidence of pretext in this case. We have the actual supervisor of Ms. Louie, Charles Roberts, going to – wrote a declaration on her behalf stating, look, before these alleged independent decision makers, Mr. Carter Clark and Ms. Karen Bacon, decided her downgrade after she's had an unblemished record at the USPS, that the decision was made already. And he opposed it. And then when he opposed it, they took him out of her chain of command and then they put in place two other employees who didn't – and in the record we don't even see any independent investigation by them. I mean, how could there be? If you look at the notice of proposed downgrade, all of those facts that are in that notice of proposed downgrade, including allegedly throwing packages, including investigating sexual harassment, including working with a union employee to give him his day off, those were all facts gathered before Carter Clark and Ms. Karen Bacon even got the case. So clearly there was no – I can understand the USPS's reasoning or DeJoy's reasoning. If, for example, this is a situation where, okay, look, we're going to take you out, Mr. Roberts, of the decision making. We're just going to pass this on to Carter Clark and Karen Bacon. Karen Bacon, Carter Clark, you guys, we're not giving you anything. We're just going to tell you to investigate it, start over from scratch. That's not what happened in this case. You know, there was also error regarding the protected activities in this case. The Supreme Court has made it clear in Burlington Northern v. Santa Fe, and this court has followed that direction, that adverse actions for retaliation case must – simply must dissuade somebody from making a complaint again. It's not a tangible employment action analysis in a retaliation case. It is for a disparate treatment case, and that's why we didn't argue that the proposed discipline was disparate treatment, but we argued it was adverse action for retaliation. And finally, with regards to Ms. Louie's hostile work environment case, there's just so much evidence of hostility, the totality of the circumstances in this case. Was that claim, was that administratively exhausted? In our opinion, Your Honor, it was not. I mean, in our opinion, we – yeah, in our opinion, the – Your answer should be it's exhausted. Yeah, we exhausted administrative remedies. So my next question is, tell me how. And here's the reason why. So all of the actions we mentioned, including the hostile statements based on race, the hostility from the subordinate staff and the management condoning it, you know, the funny thing is I don't think any one of those would even be considered a hostile work environment in and of themselves. So it's kind of impractical to expect a federal employee to basically allege a hostile work environment every time they hear a bad thing about Korean people. And mind you, Ms. Louie's not even Korean. She's Chinese. But – and so it's like how can you – how can – I don't think the spirit of that 45-day – You're arguing that – not that it was exhausted, but the exhaustion should be excused? No, we're arguing that it's a continuing violation, but the totality of – basically, we argue the reason it's supposed to be – it's exhausted is because Ms. Louie is combining all of those instances into one hostile work environment claim. Let's just talk about what actually happened.  She – when did she – what did she do for her administrative exhaustion? She filed a complaint, the internal complaint that she was required to file. Correct. And at that moment in time, that was challenging both the demotion, and then you're saying and the demotion as part of a continuing violation of hostile work environment.  So treating the demotion both as a freestanding act and as part of an overall course of conduct. Is that what you're – Correct, Your Honor. And the district court rejected that, sort of saying the demotion is sort of divorced from the rest of the hostile work environment, and because she only – and sort of, as I understand, disaggregated them for the purposes of finding exhaustion. And is that the error that you are challenging? We're alleging that was an error, because if you look in the record, there's a copy of Ms. Louie's complaint, and she mentions all these adverse actions. And I'm not saying the complaint in court. I'm talking about the complaint made internally with the EEOC. And you're saying, if I understand it, the fact that the hostile work environment continued thereafter doesn't mean she has to file a new complaint she's already raised. She, in effect, has met the exhaustion requirement by the initial complaint. I think that's precisely right, Your Honor, because especially how would a layperson even think to know to actually include additional stuff after they've filed an additional complaint? But yes, it's all just one hostile work environment. The USPS obviously is arguing these are all discrete acts. Every little comment is a discrete act. Every little adverse action is a discrete act. But the thing is, even discrete acts aggregated together. In a case, you know, that we recently just argued a year ago, Edwards v. U v. Joy. That was another case, and we mentioned it in our reply before. There was discrete acts. But in congregation, it was still a hostile or in combination congregation, that was still considered a hostile work environment. And if I understand you correctly, part of your argument on the exhaustion issue is that she wouldn't really have a meritorious hostile work environment claim until she was demoted because that was sort of the— it was taking all the prior conduct plus the demotion in the aggregate that gave rise to a viable hostile work environment claim. Correct, Your Honor. It was the culmination. Okay. It was the culmination. So let's say we agree with you on that. Why didn't you address the exhaustion issue in your opening brief? Or did you? Or if you didn't, then why should that be excused? You know, I think the issue, Your Honor, is, you know, the case that that defendant cited says that all the claims that need to be addressed need to be addressed on the opening brief. We understand that. Our interpretation of a claim is the actual claims, retaliation, hostile work environment, disparate treatment. You know, I think it is up to interpretation. What is a component of those claims that actually need to be separately argued in addition to it? And, you know, the irony is the defendant's arguing the same thing with regards to the complaint. I mean, you know, like that one of the protected activities of her complaining to her supervisor was, you know, not made in the First Amendment complaint. You know, again, where there is a line where how much notice do we have to give to the other side about what we're opposing? In our opinion, I couldn't find a case, truthfully, about directly addressing this issue. How much specificity regarding an individual claim needs to be made? You know, I think that's at this Court's discretion to decide. We believe by mentioning hostile work environment and bringing it up on appeal allows us to argue for all the components underneath it. And finally, you know, I think the last point I want to make, and then I'll reserve the rest of our time, this is one of those cases where why these statutes exist. These statutes exist because you can be in an environment where everybody says you are wrong, that you are a bad supervisor, that you don't know what you're doing. Just like Brown v. Board of Education where there's literally all these white folks and then there's minority folks, and, you know, these folks are on an island. This case basically is telling employers, look, you're not employees, you're not on an island. There's a court system that at least allows you to get a broader perspective and not just the perspective of the people who are potentially discriminating against you. I'll reserve the rest of my time. Thank you.  Good morning. Katie Fairchild, Assistant United States Attorney on behalf of the United States Postmaster General, Louis DeJoy, the district court's judgment should be affirmed because it correctly held that Dawn Louie did not meet her burden on summary judgment. Louie did not show that there was a genuine issue of material fact for every element on which she bears the burden for her three Title VII claims of disparate treatment, retaliation, and hostile work environment. I'm going to turn first to Louie's disparate treatment claim. While there are a number of grounds on which this panel may affirm, I want to focus this morning on the most straightforward path in which Louie concedes two points. First, Louie does not dispute that the Postal Service met its burden of production to state a legitimate, nondiscriminatory reason for Louie's downgrade, thereby requiring Louie to show pretext through specific and substantial evidence. Karen Bacon's downgrade decision satisfies the Postal Service's burden of production. It provides two specifications or reasons for Louie's downgrade. I'm going to focus on Specification 1 because Bacon's decision indicates that it provides a sufficient reason, standing alone, for Louie's downgrade, which is all this court requires. For Specification 1, Bacon determined that Louie authorized paying a rural carrier less than he was entitled to under a national union contract, and this was a sufficient reason to warrant her downgrade. It wasn't her argument that she was actually trying to act to do something for him? No. Our argument is that she violated the contract by authorizing that he is paid less than he is entitled to. The contract indicated that if the rural carrier, Dennis Curl, worked on his relief day, he was entitled to more than his daily rate of pay, and as Bacon described, Louie did not authorize that additional payment that she paid him less than he was entitled to. The union filed a grievance, and the administrative record reflects that the rural carrier received additional payment due to Louie's actions. And that brings us to Louie's second concession. Louie doesn't dispute that she authorized that the rural carrier be paid the lesser amount. She argues that she shouldn't be disciplined because of it, but she concedes that she authorized it. But as Bacon describes in her decision, whether or not a rural carrier agrees or is coerced doesn't matter. Louie didn't have the authority to deviate from the national agreement in this way and reduce the pay it afforded Mr. Curl. She explained that Louie is responsible for adhering to the national agreement, and her failure to do so exposes the Postal Service to liability. Louie has not brought forth competent evidence of Postal Service management of this payment scheme. And importantly, Louie concedes a critical point. Put in terms of the pretext showing that Louie must make to defeat summary judgment, her argument does not show that Bacon did not honestly believe the reasons for Specification 1 or that her explanation was not worthy of credence. And the District Court's decision should be affirmed on this basis. At one point, the District Court says that Louie needed to show four things, and the fourth was that the, according to Louie, was that the job went to someone outside the protected class. But the District Court said that Louie's replacement did not meet that fourth element because he had not been, quote, reported to have engaged in conduct similar to the conduct she was reported to have engaged in and that served as a basis for USPS's decision to downgrade her position. Was that right? I believe, Your Honor, you're referring to the Prima Fascia case. And yes, we do believe that is correct, that Louie did not meet, did not satisfy a Prima Fascia case. But this Court doesn't even need to get to that question. I understand your argument that we don't have to get to it, etc. But I just want to make sure, how can you say that that was right? That can't be right. So if I take literally what the District Court said, it means if you're a, let's say, a person of color and you're demoted and replaced by someone who is white, that's not good enough. You have to show that the person who was white engaged in the same conduct that you're accused of having wrongly engaged in and yet was given that position. I don't know of any Supreme Court or other decision that says that's what you have to show. What we're saying is that it's not sufficient standing alone when someone is downgraded or demoted for cause to say what Louie has said, which is that the temporary replacement is outside my protected class. Louie hasn't provided any competent evidence for this point that would provide additional information other than the fact that after she was downgraded for cause, that someone who she perceives to be outside her protected class temporarily filled the position. To provide an inference of discrimination, she could perhaps have shown who the potential pool of candidates were to fill the temporary spot or that the person who filled the temporary spot engaged in the same kind of conduct, but yet they were allowed to fill the position. Yeah, that is something she could have shown, but she's not required to show that, and that's what the District Court said. So I will refer back to our two cases cited in our brief in which this court has held that simply alleging that someone outside your protected class replaced you was not sufficient. Just give me one moment. I will see if I can recall those cases. I apologize. Well, I'm looking at another court you may have heard of called the Supreme Court of the United States. Yes, Your Honor. And in St. Mary's Honor Center v. Hicks, 509 U.S. 502 at 506 in 1993 decision, which was a demotion suit. They say that what has to be shown as to the fourth element was, quote, that the position remained open and was ultimately filled by a white man. In other words, a person who was not part of the protected class. But the District Court here said, oh, it has to be someone who was not only not part of the protected class, but has to be someone who engaged in the same conduct and yet was still allowed to take that position. And I don't see anywhere in the Supreme Court decision remotely suggesting that. So, Your Honor, I the two cases I were referring to was Moreno v. Cox, and that's it. Eight one eight F Appendix 763. And this court also discussed it in Kiefer v. Tractor Supply. No, the first one's unpublished. Is this the second? They are both unpublished, Your Honor. You know, you know as well as I do. Those are not precedent for us. Yes. Yes, Your Honor. I would distinguish this the situation that you're talking about where position remain remained open. Here, Louis was downgraded for cause. And the rule that I thought. Yes, Your Honor. The rule that that Louis appears to be asking for is that it necessarily raises an inference of discrimination. If someone is downgraded for cause and isn't immediately, even temporarily replaced with someone inside of their protected class. If there's additional information that supports, for example, that they aren't similarly situated or someone engages in the same context. That's a different question. But here. Yes, Your Honor. Taking a step back. I mean, I understand the crux of the theory of the case here for plaintiff is that all the complaints against the plaintiff were driven by racial animus. And that there, that racial animus is essentially but for cause of everything that happened. They wouldn't have complained. They wouldn't have filed the grievances. They wouldn't have, you know, they wouldn't have. Nothing would have happened the way it did if not for the racial animus of various actors and what happened. And that the ultimate decision makers, you know, the stamp of approval given by Bacon is tainted essentially by all that racial animus. And I don't. And that that's essentially a quintessential factual dispute. Whether these things would have occurred, but for racial animus and that they don't have to necessarily show one way they could show that this is what happened is through comparators of similarly situated employees. But those may or may not exist in a given situation. That can't be the only way they prove such a claim. So do you have any case that's binding on us that suggests that they had to do more to create a genuine disputed material fact on this or that they couldn't prevail on this theory of the case? If I'm understanding your your honor's question to answer in two parts. No, Louie did not have to show by comparators, but that's what she attempted to do. And our argument is that she didn't do it. Wait a minute. She attempted to do what she showed was that she was demoted and somebody else. White people were put into that position. What what more does she need to show? That she needs to show that that raises an inference of just that that raises an inference of discrimination because either they. But what more does she need to show to satisfy Criterion 4? Because the district judge says Criterion 4 was not satisfied. So it seems to me that it is. I mean, I apologize for piling on. I think it's now three. I think it's three of us who are all asking you variations on the same question. OK, I your honor. That it are our position is that it's not sufficient to simply state that I was temporarily replaced by someone outside. Well, it's more than temporarily. I mean, they didn't send her back to Shelton. No, she was replaced, period. And the people put in were temporary. But was was there ever somebody inside the protected class that was put in permanently? They're the permanent. The person who was hired for the permanent position was Tammy Nicholson. So. So, yes, there was. And she she is. She is. She is a woman. Asian? No, non-white. Not not to my knowledge, your honor. So in other words, we still have somebody outside the class. Yes, your honor. But the critical question, even if your honor finds the prima facie case is made, comes down to pretext. And for the reasons I previously described, Louie does not show pretext. And for that reason, this this court should affirm if there aren't any additional questions on this point. I'd like to move to the retaliation claim. The district court correctly granted summary judgment on the Postal Service's retaliate. Excuse me for the Postal Service on Louie's retaliation claim for three reasons. One, because Louie's actions in taking an angry non-employee who was yelling at his postal employee wife into an employee only area is not protected opposition activity. Two, because even if this panel were to accept Louie's post hoc spin on the relevant events, characterizing her actions as opposing sexual harassment, the district court correctly held that Louie failed to demonstrate a causal link to Bacon's decision to downgrade Louie. And three, because Louie cannot raise a new legal theory for retaliation, not pled in her amended complaint. And taking the district court's second reason first, Bacon's downgrade decision expressly stated that she did not consider specification three, taking the angry husband into the employee only area in determining to downgrade to downgrade Louie. She explained that she disagreed with the approach, that there were alternatives to bringing this non-employee into the workplace, but found that given the totality of the circumstances, it did not rise to the level of unacceptable conduct. So Bacon made clear she didn't distinguish it. And this also shows that this was independent judgment because she didn't accept what was given to her. She decided this this wasn't sufficient. Because Louie cannot demonstrate a causal link to her downgrade, the district court's retaliation decision should be affirmed for this reason alone. But moving back to the district court's first reason for granting summary judgment, the record does not support Louie's post hoc spin and characterizing the relevant actions as opposing sexual harassment. Among other things, Louie's contemporaneous email admits that she allowed an angry, yelling non-employee to enter an employee only area in order to, quote, calm him down after she witnessed a domestic altercation with his postal employee wife. Counsel, I think we understand your point there. So with your remaining time, can you address the question of. Assuming we think we have the discretion to reach the merits of the hostile work environment claim and specifically the administrative exhaustion issue. Why wasn't that error on the district court's part of the administrative exhaustion issue, Your Honor? It wasn't air because it it is a discreet, a discreet act. As as Your Honor raised in the first argument, there is no question. There should be no question that Louie has waived this on appeal by not raising it. She mentions hostile work repeatedly in her brief. She mentions the merit of hostile work environment, but that's not she doesn't mention exhaustion once, not not. Well, I said let's assume we exercise our discretion to reach this issue on the merits of the administrative exhaustion issue. My understanding is that the district court or that plaintiff contends they exhausted it because the demotion is both a standalone act and the culmination or part of a continuing course of conduct that mounted to hostile work environment. Why is why does that argument not succeed on the merits? That argument doesn't excuse me, succeed on the merits under Morgan and Porter. And the reason it doesn't succeed is because it's a discreet act. And I believe, although it's not clear even in the reply brief, what act Louie is referring to, I believe she's referring to the proposed downgrade. So you think we couldn't consider the demotion as part of the hostile work environment claim? I'm saying you shouldn't because it's a discreet it's a discreet act. And the reason it's a discreet act is because hostile actions that make up a hostile work environment claim need to be made because because of animus based on a protected class. And the proposed downgrade made by Carter Clark or even the downgrade made or even the downgrade decision issued by Karen Bacon, Louie hasn't provided any competent evidence of gender, racial or national origin basis on their part. The what Porter instructs is that you look at the hostile work environment that that the plaintiff has pled or described. And if you look at what's pled or excuse me, described in in her brief and her reply, she talks about alleged comments of racial and gender hostility and actions taken by individuals who have exhibited who have allegedly exhibited bias. That bias is not attributed to Carter Clark or Karen Bacon for that matter. Yeah, but we we've got a line of cases. I'll call them cat's paw cases where you have a neutral decision maker. But the information, an argument that's coming before the administrator and upon which the decision is made is coming from discriminatory sources. And so so Bacon may be innocent, but everything she's basing her decision on is not. I see my time is up. May I may answer your honor's your honor's question. When we're talking about cat's paw, that's an argument that plaintiff has has argued in connection with the disparate treatment. And so that may be an inquiry that your court that your honor and this court undertakes with respect to cat's paw. And again, for the reasons we've stated, we argue that Bacon's decision was independent and they haven't provided competent evidence that she did not honestly believe it, which is the question. For pretext, when it comes to hostile work environment, to the extent that they're arguing a cat's paw theory for that, that's not that's not clear in the in the brief. But your argument as to why it couldn't be considered part of the course of conduct is because it was. Essentially, like we would have to find it's not a cat's paw decision. I mean, are like all the I think there's and there's. You know, the ultimate decision to demote by Bacon. I think their argument is that there were interim decision makers whose decision was tainted by racial animus. That's the factual dispute. So in that. You know, construing those facts in favor of plaintiff, why wouldn't that be enough to say that the demotion is part of their hostile work environment claim for two reasons? And I see my my answer. OK. For two reasons. It plaintiff has to tie it, has to tie Bacon and Clark's decision to the extent that that's what we're talking about by competent evidence. And plaintiff has made speculation and she has made conclusory allegations, but she hasn't tied it to speculative evidence. And I would ask where in the record does it show that that Bacon that Bacon's decision wasn't wasn't independent? I guess if we disagree with that reading of the record, would that be enough? No. For the second for the second reason, because the act of the proposed downgrade or even if we're going to consider it the downgrade. Isn't part of the alleged hostile work environment that's been that's been painted because it's not it's not based on a on a protected class. These are these are different actors. And this is the line that was drawn in Porter. And we would ask that the court reach the same decision for for all these reasons. We ask that this this panel affirm the decision of the of the district court. OK, thank you. Thank you. Your Honor, counsel spent some time regarding the honest belief of Miss Bacon. I wanted to point the court's attention to S.E.R. one thirty seven. This is just that Miss S.E.R. one thirty seven. It was submitted by defense counsel. I think even if you look at her deposition transcript. Miss Bacon, when asked under oath by myself, I asked, do you think Don Lewis line? About assault or, you know, throwing packages. And she says, if I recall from their appeal, I didn't necessarily perceive her to be lying, but not, you know, sometimes we don't recall things the way, you know, we don't perceive our actions the way others or, you know, don't appreciate the significance or the seriousness. So I don't recall having the belief that she was lying. If the decision maker can't even commit to the to the person who's trying to defend themselves, being dishonest. That by definition to me is what not having an honest belief that the reasons for an adverse action are legitimate. And the one thing I also just did want to remind the court to defense counsel did spend some time about talking about, well, whether or not Miss Louie took the right action by bringing the guy in and trying to, you know, Louie's version of events is she's trying to de-escalate the situation. Their version of events is it's the opposite. She's like amplifying it. That's a question of fact. But also, let's just assume. Yes, but Bacon didn't rely on that one. Correct. Well, no, Bacon. Bacon. Well, Bacon withdrew that. The irony is that Bacon withdrew that as a reason for her final determination. But it's still part of it still could be a window into the initial proposed discipline and still could be the reason for the discipline. Even if she denied it doesn't mean it can't be a reason for the discipline. No, that doesn't make any sense. But you said withdrew. What do you mean withdrew? They're saying she and Bacon initially relied on it. Yeah, because it was in the proposed removal. That was why they one of the reasons she was what Miss Louie was proposed for downgrade. Well, I know proposed by whom? By Bacon? That was by Carter Clark. So with Drew, did Bacon ever rely on that third grade on that third ground? In my opinion, Your Honor, I think that's a question of fact. She stated she didn't. She said she didn't rely on. Correct. Okay. So do you have any reason to think that she did? I do. Yeah. And the reason is because notice the downgrade didn't even happen until. Well, the reason is because the cat's paw theory still applies. I think we wouldn't have been we wouldn't even be in the decision where Bacon could even make the decision. If that event didn't happen where she was investigating sexual harassment. I get all that. And this may be a small point, but as I read the record, Bacon says on that third ground, I just don't rely on it. I rely on grounds one and two. And you say that she did rely on ground three. But I'm not hearing anything from you that tells me why you think that except some general sense. Yeah, the only evidence we have to support that is just that it is based on the cat's paw theory. Okay. And then finally, the one thing I just wanted to report or remind this court about is, look, one of the most seminal cases for Title VII happened within the last five years. That was the case Bostock. And Bostock ruled that just because the causation standard says but for for Title VII in a retaliation case doesn't mean that there can't be multiple but for causes. In this case, certainly there could be some nondiscriminatory reasons for the post office wanting to downgrade Louie. Maybe, you know, they just don't like how she manages people. Maybe they did truly believe that she caused a safety issue. But the jury gets to weigh whether there was multiple but for causes, not just one. So with that being said, we thank you, Your Honors. Thank you for your arguments. With that, this matter is submitted.
judges: FLETCHER, SUNG, Rakoff